Citation Nr: 1829804 
Decision Date: 08/16/18 Archive Date: 08/30/18

DOCKET NO. 13-33 796 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUES

1. Entitlement to service connection for a respiratory disorder, to include as due to chemical exposure.

2. Entitlement to service connection for hypertension (HTN) as secondary to Agent Orange (AO) exposure.

3. Entitlement to service connection for erectile dysfunction (ED) as secondary to AO exposure.

4. Entitlement to service connection for peripheral neuropathy of the bilateral upper extremities.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

S. Kalolwala, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1960 to October 1963 and from August 1966 to July 1970, including service in the Republic of Vietnam. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2013 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana. 

In July 2014, the Veteran appeared with his representative for a videoconference hearing before another member of the Board who has since retired. A transcript of that proceeding has been associated with the record. 

The law requires that the Veterans Law Judge (VLJ) who conducts a hearing on an appeal must participate in any decision made on that appeal. 38 U.S.C. § 7107(c); 38 C.F.R. § 20.707 (2017). As that person is no longer available, the Veteran was notified by a letter dated in mid-September 2017 of his right to an additional hearing before a VLJ that will make a decision on this appeal. The Veteran was further notified that if no response was received within 30 days from the date of that letter, the Board would assume that he does not want an additional hearing and proceed accordingly. The record does not reflect the Veteran has submitted a response. Accordingly, the Board will presume the Veteran elects to proceed without an additional hearing.

These matters were remanded by the Board in October 2015 for additional development. Such development was completed and the matters returned to the Board for appellate consideration. 

A December 2015 rating decision by the RO granted, in pertinent part, entitlement to service connection for a low back disability. The RO's grant of service connection for this issue constitutes a full award of benefits sought on appeal. See Grantham v. Brown, 114 F.3d 1156, 1158 (Fed. Cir. 1997). Thus, this matter is no longer in appellate status. Id. (holding that a separate notice of disagreement must be filed to initiate appellate review of "downstream" elements such as the disability rating and/or the effective date assigned).


FINDINGS OF FACT

1. The Veteran's respiratory condition was not incurred in, caused by, or otherwise etiologically related to service, to include chemical exposure in service.

2. The Veteran's HTN was not incurred in, caused by, or otherwise etiologically related to service; nor was it proximately due to exposure to AO.

3. The Veteran's ED was not incurred in, caused by, or otherwise etiologically related to service; nor was it proximately due to exposure to AO or any service-connected disability.

4. The Veteran's peripheral neuropathy of the bilateral upper extremities was not incurred in, caused by, or otherwise etiologically related to service.


CONCLUSIONS OF LAW

1. The criteria for service connection for a respiratory disorder have not been met. 38 U.S.C. §§ 1110, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2017).

2. The criteria for service connection for HTN secondary to AO exposure have not been met. 38 U.S.C. §§ 1110, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303, (2017).

3. The criteria for service connection for ED secondary to AO exposure have not been met. 38 U.S.C. §§ 1110, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2017).

4. The criteria for service connection for peripheral neuropathy of the bilateral upper extremity have not been met. 38 U.S.C. §§ 1110, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's duty to notify was satisfied by a letter dated in September 2012. See 38 U.S.C. § 5103 (2014); 38 C.F.R. § 3.159 (2017); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The duty to assist the Veteran has also been satisfied in this case. Neither the Veteran nor his representative has identified any other deficiency in VA's notice or assistance duties. Accordingly, the Board finds that no prejudice to the Veteran will result from the adjudication of his claims in this Board decision. 

I. Service connection

 Legal Principles

Establishing service connection generally requires (1) evidence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 281 F.3d 1163, 1167 (Fed. Cir. 2004). The current disability requirement is satisfied when a veteran "has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim," McClain v. Nicholson, 21 Vet. App. 319, 321 (2007), or "when the record contains a recent diagnosis of disability prior to . . . filing a claim for benefits based on that disability," Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013). 

Where a veteran who served for ninety days or more during a period of war (or during peacetime service after December 31, 1946) develops certain chronic diseases, such as hypertension and organic disease of the nervous system, to a degree of 10 percent or more within one year from separation from service, such diseases may be presumed to have been incurred in service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. See 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease shown as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. If a condition, as identified in 38 C.F.R. § 3.309(a), noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. § 3.303(b). 

Service connection may also be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2017).

Veterans who served in the Republic of Vietnam (Vietnam) between January 9, 1962, and May 7, 1975, are presumed to have been exposed to herbicide agents, such as AO, unless there is affirmative evidence to the contrary. 38 U.S.C. § 1116(a)(1); 38 C.F.R. §§ 3.307(a)(6)(iii). Certain listed medical conditions may be granted service connection on a presumptive basis due to such exposure. 38 C.F.R. § 3.309(e). The availability of presumptive service connection does not, however, preclude a grant of service connection on a direct basis. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994); 38 C.F.R. § 3.303 ("The presumptive provisions of the statute and [VA] regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.").

For a veteran to be entitled to the presumption of service connection under 38 C.F.R. § 3.307(a)(1)(6)(iii), he or she must have been present at some point on the landmass or "inland waters" (aka brown waters) of Vietnam. Haas v. Peake, 525 F.3d 1168, 1182-83 (Fed. Cir. 2008). 

There is a large amount of evidence in this case, consisting of both lay and medical evidence. The Board notes that it has reviewed the evidence in its entirety, but will not be discussing all of it with specificity. See Newhouse v. Nicholson, 497 F.3d 1298, 1302 (Fed. Cir. 2007) (the Board is presumed to have considered all evidence presented in the record; it is not required to specifically discuss every piece of evidence).

Respiratory Disorder

 Factual Background

The relevant evidence of record consists of the Veteran's service treatment records (STRs), military personnel records (MPRs), post-service VA and private medical treatment records, and lay statements by the Veteran and other sources.

STRs reflect sporadic complaints of chest pain in service. For instance, records dated in January 1967 reflect the Veteran presented with a dull pain in his chest. At that time, imaging studies of the Veteran's chest were performed and found to be negative. The examiner ruled out pulmonary embolism. A report of medical history dated in February 1968 reflects the Veteran denied any issues with asthma, shortness of breath, or pain in the chest. A report of medical examination dated in March 1970 is negative for any respiratory conditions. 

Private medical treatment records dated in October 2001 reflect a diagnosis of chronic obstructive pulmonary disease (COPD). The records also reflect a history of smoking 1.5-2 packs of cigarettes per week. Subsequent medical records maintain a diagnosis of COPD with moderate to severe emphysema. The private treatment records do not provide an opinion regarding the etiology of the Veteran's condition. 

As mentioned, the Veteran testified at a hearing in July 2014. At that time, the Veteran reported, in pertinent part, that his respiratory problems began in June 1970 (prior to separation). However, he indicated he did not seek treatment for such issues until July 1970 (after separation). The Veteran relayed that he was diagnosed with COPD by a private physician and that he was prescribed an inhaler. 

In a statement dated in June 2014, the Veteran, through his representative, expressed, in pertinent part, his belief that his respiratory condition was due to exposure to smoke/fumes in service. In particular, the Veteran indicated that while in Vietnam, he would have to "burn human waste as well as left over black gun powder," and that they used diesel fuel as an accelerant which created a thick cloud of smoke. 

Report of the December 2015 VA respiratory examination reflects, in pertinent part, the Veteran's statements regarding exposure to fumes while in Vietnam and throughout his military career. The Veteran also reported that he was first diagnosed with COPD and emphysema in the mid-1990s. The examiner noted the Veteran's extensive history of smoking. The examiner opined that the Veteran's respiratory conditions were less likely than not incurred in or caused by the Veteran's claimed exposure to smoke/fumes in service. In doing so, the examiner noted that the Veteran's March 1970 medical examination was negative for any respiratory symptoms or conditions, and that the Veteran's COPD and emphysema were diagnosed several years after service. The examiner noted that despite the Veteran's contentions regarding exposure to smoke/fumes in service, the main cause of COPD is tobacco use. The examiner highlighted the Veteran's extensive history of smoking. The examiner also noted the lack of medical literature associating AO exposure to respiratory conditions such as COPD. 


 Analysis

Based on a review of the evidence, the Board finds that entitlement to service connection for respiratory condition is not warranted in this case because the evidence fails to show a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability.

In making this finding, the Board accords significant probative weight to the December 2015 VA examination. The examiner reviewed the Veteran's pertinent medical history, documented his current complaints, and rendered findings consistent with the remainder of the evidence. As such, the opinion is adequate and entitled to significant probative weight. 

Here, the December 2015 examiner noted, in pertinent part, that the main cause of COPD is tobacco use. The examiner suggested that despite the Veteran's contentions regarding exposure to smoke/fumes in service, his current respiratory conditions are more likely due to his extensive history of smoking. In light of the foregoing, the examiner opined that the Veteran's current respiratory conditions were less likely than not incurred in or caused by service.

The Board has considered the various lay statements of record, including the Veteran's statements regarding onset of symptomatology prior to separation and a subsequent diagnosis of COPD immediately thereafter. The Veteran is clearly competent to relay information obtained from a medical professional. Once evidence is determined to be competent, the Board must determine whether the evidence is also credible. The former, the Court has held, is a legal concept, which is useful in determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Credibility can be generally evaluated by considering interest, bias, or inconsistent statements, the demeanor of the witness, facial plausibility of the testimony, and the consistency of the witness testimony. Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996).

In this case, the Board finds that the lay statements by the Veteran regarding exposure of symptoms and diagnoses of a respiratory condition are internally inconsistent and not supported by the other evidence of record. At his July 2014 hearing, the Veteran indicated his respiratory problems began in June 1970, but that he did not seek treatment for this condition until after separation. He further indicated he was diagnosed with COPD immediately after service in July 1970. Unfortunately, available treatment records do not support these statements. Moreover, at the December 2015 VA examination, the Veteran indicated he was first diagnosed with COPD and emphysema in the mid-1990s, which undermines the Veteran's credibility as an accurate historian. 

In short, the Board finds the Veteran's statements to be internally inconsistent and not entitled to any probative value.

Based on a review of the foregoing evidence, and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for a respiratory condition. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the Veteran's claim for entitlement, that doctrine is not helpful to the Veteran. See 38 U.S.C.§ 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Hypertension (HTN)

 Factual Background

The relevant evidence of record consists of the Veteran's STRs, MPRs, post-service VA and private medical treatment records, and lay statements by the Veteran and other sources.

STRs are negative for any findings of, complaints of and/or treatment for HTN or associated symptomatology. 

MPRs reflect the Veteran has verified in-country service in Vietnam from September 1968 to September 1969. 

Collectively, VA and private treatment records reflect ongoing complaints and treatment for HTN. However, the treatment records do not provide an opinion regarding the etiology of the Veteran's condition. 

At his July 2014 hearing, the Veteran testified, in pertinent part, that he believes he was diagnosed with HTN sometime in the "late '70s or early '80s," and that such disability is due to his exposure to AO in service. The Veteran did not recall being prescribed any medication for this condition at that time. 

Report of the December 2015 VA examination reflects, in pertinent part, a diagnosis of HTN with onset in or around 1977, according to the Veteran. The examiner noted the Veteran is currently prescribed medication, i.e., Diltiazem, to help control his HTN symptoms. The examiner opined that the Veteran's HTN was less likely than not incurred in or caused by service, including exposure to AO. In doing so, the examiner first indicated STRs are negative for any complaints and/or treatment for HTN in service, and that by the Veteran's own admission HTN had onset several years after service. Next, he explained that although most essential HTN is idiopathic, i.e., unknown etiology, there is no medical literature to support an association between exposure to AO and the development of HTN. 

 Analysis

As a preliminary matter, the Board notes the Veteran has verified in-country service in Vietnam, and was thus presumptively exposed to herbicide agents such as AO. However, HTN is not included among the listed disabilities under 38 U.S.C. § 3.309(e) for which VA has determined a positive association. Thus, the presumption afforded under this provision cannot provide a basis for a grant of service connection. Notwithstanding, consideration of whether a grant of service connection on a direct basis is warranted is still necessary in this case. See Combee, supra.

Based on a review of the evidence, the Board finds that entitlement to service connection for HTN, to include as due to exposure to AO, is not warranted in this case because the evidence fails to show a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability.

In making this finding, the Board accords significant probative weight to the December 2015 VA examination. The examiner reviewed the Veteran's pertinent medical history, documented his current complaints, and rendered findings consistent with the remainder of evidence. As such, the opinion is adequate and entitled to significant probative weight. 

In particular, the December 2015 VA examination noted STRs are negative for any complaints and/or treatment for HTN in service. In particular, the examiner referenced the March 1970 medical examination which was negative for complaints and/or diagnosis of HTN. Moreover, the Veteran reported that onset of HTN occurred several years after service. The examiner further explained that although most essential HTN is idiopathic, i.e., unknown etiology, there is no medical literature to support an association between exposure to AO and the development of HTN. Thus, there is no basis for a grant of service connection on a direct incurrence basis. Also, as HYN was not shown to a compensable degree within one year of service discharge, service connection for this chronic disease may not be presumed.

The Board has considered the Veteran's statements, including that his HTN is related to his exposure to AO while serving in Vietnam. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, questions of medical causation fall outside the realm of common knowledge of a lay person. See Jandreau, supra (lay persons not competent to diagnose cancer). In this case, the cause of the Veteran's HTN is a matter suited to the realm of medical expertise. As such, to the extent the Veteran is addressing questions of medical causation, the Board finds his statements are not competent lay evidence. Notwithstanding, the probative medical evidence outweighs the lay statements.

Based on a review of the foregoing evidence, and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for HTN, to include as due to exposure to AO.

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the Veteran's claim for entitlement, that doctrine is not helpful to the Veteran. See 38 U.S.C.§ 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Erectile Dysfunction (ED)

 Factual Background

The relevant evidence of record consists of the Veteran's STRs, MPRs, post-service VA and private medical treatment records, and lay statements by the Veteran and other sources.

STRs are negative for any findings of, complaints of and/or treatment for ED and/or voiding dysfunction.

MPRs reflect the Veteran has verified in-country service in Vietnam from September 1968 to September 1969. 

Collectively, VA and private treatment records reflect ongoing complaints and treatment for ED. In particular, treatment records dated in January 2011 reflect a diagnosis of hypogonadism most likely due to obesity and other illnesses. However, the treatment records do not provide an opinion regarding the etiology of the Veteran's ED. 

At his July 2014 hearing, the Veteran reported, in pertinent part, that he noticed problems of ED in the early 1980s. The Veteran indicated he utilized medication such as Viagra without any success. 

Report of the December 2015 VA reproductive examination reflects, in pertinent part, diagnoses of ED, hypogonadism, and benign prostatic hyperplasia (BPH). The Veteran is currently treating his hypogonadism with testosterone cream. The examiner noted the Veteran has voiding dysfunction characterized by increased urinary frequency. The Veteran declined physical examination of his genitals. The examiner opined that the Veteran's ED was less likely than not incurred in or caused by service, including exposure to AO. In doing so, the examiner opined that the Veteran's ED is at least as likely as not due to the aggregate effect of his hypogonadism, HTN, BPH, and COPD. In particular, the examiner explained that hypogonadism results in low testosterone which is necessary to have and/or maintain an erection. He further indicated that the medication for treatment of HTN is known to cause ED. Lastly, the examiner indicated that BPH and COPD are also known to cause ED. The examiner indicated that there is no medical literature to support an association between exposure to AO and the development of ED, regardless of the underlying cause of the ED, i.e., HTN, hypogonadism, BPH, or COPD. 

 Analysis

As a preliminary matter, the Board notes the Veteran has verified in-country service in Vietnam, and was thus presumptively exposed to herbicide agents such as AO. However, ED is not included among the listed disabilities under 38 U.S.C. § 3.309(e) for which VA has determined a positive association. Thus, the presumption afforded under this provision cannot provide a basis for a grant of service connection. Notwithstanding, consideration of whether a grant of service connection on a direct basis is warranted is still necessary in this case. See Combee, supra.

Based on a review of the evidence, the Board finds that entitlement to service connection for ED, to include as due to exposure to AO, is not warranted in this case because the evidence fails to show a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability.

In making this finding, the Board accords significant probative weight to the December 2015 VA examination. The examiner reviewed the Veteran's pertinent medical history, documented his current complaints, and rendered findings consistent with the remainder of evidence. As such, the opinion is adequate and entitled to significant probative weight. 

In particular, the December 2015 examination noted that the Veteran's ED is at least as likely as not due to the aggregate effect of his hypogonadism, HTN, BPH, and COPD. To that extent, the Board notes that the Veteran is not service connected for any such condition; therefore, the Board need not address a secondary theory of entitlement on that basis. For instance, the examiner noted the longstanding history of HTN, the medication for which is a known cause of ED. Additionally, the examiner indicated that there is no medical literature to support an association between exposure to AO and the development of ED, regardless of the underlying cause of the ED, i.e., HTN, hypogonadism, BPH, or COPD. The examiner opined that the Veteran's ED was less likely than not incurred in or caused by service, including exposure to AO.

The Board has considered the Veteran's statements, including that his ED is related to his exposure to AO while serving in Vietnam. However, as previously indicated, the cause of the Veteran's ED is a matter suited to the realm of medical expertise. As such, to the extent the Veteran is addressing questions of medical causation, the Board finds his statements are not competent lay evidence. Notwithstanding, the probative medical evidence outweighs the lay statements.

Based on a review of the foregoing evidence, and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for ED, to include as due to exposure to AO.

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the Veteran's claim for entitlement, that doctrine is not helpful to the Veteran. See 38 U.S.C.§ 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Peripheral Neuropathy, Bilateral Upper Extremities

 Factual Background

The relevant evidence of record consists of the Veteran's STRs, MPRs, post-service VA and private medical treatment records, and lay statements by the Veteran and other sources.

STRs are negative for any findings of, complaints of and/or treatment for peripheral neuropathy or associated symptomatology, such as numbness and tingling. Likewise, STRs are negative for any findings of, complaints of and/or treatment for diabetes or associated symptomatology.

Private treatment records dated in December 2009 reflect the Veteran presented with right hand numbness and paresthesia within the median nerve since awakening from total knee replacement in April 2009. He denied any antecedent symptoms, any other trauma, or any other factor that might play a role in the development of such symptoms. Since the surgery, the Veteran has noted near-constant paresthesia and numbness in his hands and fingers. That same month, a nerve conduction study was performed and revealed significant median nerve compression at bilateral wrist, with more severe on the right. Treatment records dated in January 2010 reflect the Veteran was diagnosed with carpal tunnel syndrome (CTS). At that time, the Veteran underwent a carpal tunnel release after which he noted some improvement, but continued to have persistent paresthesia. The examiner noted that the persistent paresthesia is "not surprising given the nonresponsive nature of his median nerve noted on his electrodiagnostic test in December." 


 Analysis

As a preliminary matter, the Board recognizes that the RO did not provide the Veteran with an examination related to his claimed neuropathy of the bilateral upper extremity. In that regard, the Board finds that a medical examination is not necessary to make a decision on this claim. Specifically, the Board finds that there is no medical evidence indicating that there may be a nexus, nor is there competent and credible lay evidence of continuity of symptomatology since service. See McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006). Rather, as noted below, the Veteran acknowledged the onset of his symptoms occurred nearly four decades after service. 

Based on a review of the evidence, the Board finds that entitlement to service connection for peripheral neuropathy of the bilateral upper extremities is not warranted in this case because the evidence fails to show a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability.

In making this finding, the Board finds particularly persuasive the private treatment records dated in December 2009, which indicate that the Veteran's neuropathy symptoms are related to his diagnosed CTS. In particular, the examiner noted the Veteran's statements regarding onset of symptoms such as numbness and paresthesia within the median nerve since his total knee replacement in April 2009, nearly four decades after service. To that extent, the Board notes that the Veteran is not service connected for a knee disability. As such, there is no medical evidence in this case indicating there may be a nexus between the Veteran's neuropathy symptoms and/or CTS and military service; nor has the Veteran reported continuity of symptoms since service. As mentioned, STRs are negative for any complaints of and/or treatment for peripheral neuropathy or associated symptomatology, such as numbness and tingling. Thus, a basis is not presented for a grant of service connection on a direct basis, to include on a chronic disease presumptive basis.

The Board has considered the statement by the Veteran's representative dated in March 2017, which suggests proper consideration should be given to whether the Veteran's upper extremity neuropathy is secondary to the Veteran's service-connected back. To that extent, the Board notes that there is no medical evidence of record indicating there may be a nexus between the Veteran's upper extremity neuropathy and his service-connected back. Rather, the Veteran's private physicians attributed his numbness and paresthesia in his hands and fingers to his diagnosed CTS, which developed subsequent to a total knee replacement. These findings were based upon nerve conduction studies which revealed significant median nerve compression at the bilateral wrist.

The Board has also considered the Veteran's statements, including that his upper extremity neuropathy is related service. However, as previously indicated, the cause of the Veteran's neuropathy is a matter suited to the realm of medical expertise. As such, to the extent the Veteran is addressing questions of medical causation, the Board finds his statements are not competent lay evidence. Notwithstanding, the probative medical evidence outweighs the lay statements.

Based on a review of the foregoing evidence, and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for peripheral neuropathy of the bilateral upper extremities.

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the Veteran's claim for entitlement, that doctrine is not helpful to the Veteran. See 38 U.S.C.§ 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

 (CONTINUED ON NEXT PAGE)


ORDER

Entitlement to service connection for a respiratory disorder, to include as due to chemical exposure, is denied.

Entitlement to service connection for HTN as secondary to AO exposure is denied.

Entitlement to service connection for ED as secondary to AO exposure is denied.

Entitlement to service connection for peripheral neuropathy of the bilateral upper extremities is denied.



____________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs